UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHERRY MEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-01282-JES-JEH |
| | ) | |
| GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF EDWARD D. JONES & CO., L.P., and HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

# ORDER AND OPINION

Now before the Court are cross-motions for summary judgment. Plaintiff has filed a Motion (D. 34[1]) for Summary Judgement. Defendants filed a collective Response (D. 38) in Opposition to Plaintiff's Motion for Summary Judgment and Plaintiff replied (D. 39). Defendants have also collectively filed a Motion (D. 35) for Summary Judgment. Plaintiff filed a Response (D. 37)[2] to Defendants' Motion for Summary Judgment and Defendants replied (D. 40). For the reasons set forth below, Plaintiff's Motion is DENIED and Defendants' Motion is GRANTED.

## BACKGROUND

Plaintiff Sherry Meyer ("Plaintiff" or "Meyer") brought this action after Defendants denied her claim for long-term disability benefits. Defendant Group Long Term Disability Plan for Employees of Edward D. Jones & Co., L.P. (the "Plan") is an employee welfare benefit plan

---

[1] Citations to the Docket in this case are abbreviated as "D.__"
[2] Defendants note that Plaintiff's Argument exceeds the page limit required by L.R. 7.1. Plaintiff is admonished to follow Local Rule page limits in all future filings in this District.

1

sponsored by Edward D. Jones & Co. and governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et. seq*. Defendant Hartford Life and Accident Insurance Company ("Hartford") issued an insurance policy (the "Policy") to Edward D. Jones & Co. to fund long-term disability benefits under the Plan.

The following facts are from the administrative record. D. 23. Meyer has worked for Edward D. Jones & Co. as a financial advisor since 1992. D. 23-10, at 8. Meyer stopped working full time for Edward D. Jones & Co. in November 2013. D. 23-1, at 99. As a participant in the Plan, Meyer submitted a claim in early-2014 under the Policy for mental illness disability. *Id.* at 169. Hartford approved Meyer's claim for long term disability benefits May 1, 2014. *Id.* at 130.

On July 11, 2014, Meyer began receiving chiropractic care for pain in her neck, shoulder, and lower back. D. 23-7, at 72. Meyer received thirty-four chiropractic treatments for neck and lower back pain from July 11, 2014 through May 14, 2015. *Id.* at 21-89. Beginning September 19, 2014, Meyer told her chiropractor, Dr. Kramer, that she experiences numbness, radiating pain, stiffness, and throbbing in her neck that radiates to both arms and hands. *Id.* at 21. She also described dull ache, radiating pain, and stiffness in her lower back. *Id.* Meyer told Dr. Kramer the symptoms occurred 76%-100% of the day and rated the symptoms no lower than a seven on a zero-ten scale. *Id.*

Meyer began seeing a rheumatologist, Dr. Santoro, on November 26, 2014. D. 23-7, at 12. On that date, Dr. Santoro ruled out a diagnosis of fibromyalgia due to the absence of tender points, hyperalgia and allodynia. *Id.* at 16. He suggested her symptoms may be due to soft tissue rheumatism and ordered a sleep study to explore her reported un-refreshed sleep. *Id.*

Pursuant to a regularly conducted review to determine whether Meyer can return to full-time work, Hartford sent a letter to Meyer's psychiatrist, Dr. Kyle, in March 2015 inquiring

whether Meyer had been cleared to work full time from a psychiatric standpoint. D. 23-7, at 104. Dr. Kyle responded that Meyer was able to work up to, but no more than, 40 hours per week. *Id.* at 107. Dr. Kyle noted Meyer generally worked 30 hours or less each week because Meyer became fatigued to the point where the quality of her work suffered. *Id.* Dr. Kyle went on to say, "Realistically she is not able to work more hours and her schedule will probably stay as it is. Again, it comes with the definition of what is full time or not. She is certainly able to work but not at the pace she did when she was younger." *Id.* at 108. Dr. Kyle wrote that Meyer told her on their last visit that "the most [Meyer] can do is 40 hours" *Id.* at 109.

On May 7, 2015, Hartford sent a letter to Meyer stating she no longer qualified for long-term benefits due to her mental illness. D. 23-1, at 97. Hartford lacked medical information necessary to determine whether Meyer met the Policy's definition of disability due to a physical condition and Meyer had two options to challenge the claim denial: 1. perfect her claim by providing specific documents to the claim analyst, Penny Mccormick; or 2. submit an appeal to Hartford's appeal unit. *Id.* The letter acknowledged Meyer recently began seeing a rheumatologist. Doc. 23-1, at 100. To perfect her claim, Meyer was advised to submit an Attending Physician Statement ("APS") completed by a physician who was restricting Meyer from working full-time, as well as all medical records supporting her physical disability from July 1, 2014 to present time. *Id.* Alternatively, Meyer could appeal the claim denial by sending a signed, dated letter within 180 days clearly stating her position. *Id.* at 101. Meyer could also submit written comments, documents, records and other information related to her claim as part of her appeal. *Id.*

On June 2, 2015, Meyer sent the following letter to Hartford: "Hi – Enclosed are my medical records and claim forms from two doctors. Please advise regarding my disability income

asap. EDJ [employer] still has me on part-time, irregular schedule [sic] leave of absence. My rheumatologist only wants me to work 28 or less hours a week." Doc. 23-6, at 55. Meyer enclosed medical records from her rheumatologist, Dr. Santoro, as well as records from her current and former chiropractors, Dr. Kramer and Dr. Trotter. *Id.* The letter was sent to the attention of Penny Mccormick; however, it was addressed to the appeals department. *Id.*

On August 11, 2015, Penny Mccormick sent another denial of disability benefits. Doc. 23-1, at 82. Meyer did not meet the Policy's definition of "disability" for a physical condition because she had not shown that she was unable to perform the duties of her occupation. *Id.* at 84. The essential duties of her occupation included meeting with clients, managing client finances, and establishing new business. *Id.* To perform said duties, Meyer "must be able to frequently sit with occasional walking, standing and lift/carry [*sic*] up to 25 pounds." *Id.* The decision to deny Meyer's claim was based on a full review of all the documents in her file, including medical records and APS forms. *Id.* Hartford had also sought an independent review of her file from Dr. Aayar, who was board certified in occupational medicine. *Id.* Dr. Aayar had attempted several times to contact Meyer's treating physicians for clarification on the restrictions placed on her work hours. *Id.* at 85. Dr. Aayar had been unsuccessful in contacting Dr. Santoro and his conversation with Dr. Kramer did not change his assessment that Meyer could work full-time. *Id.* Meyer was again informed of her appeal rights.

Meyer also called and spoke to Penny Mccormick on August 11, 2015. D. 23-1, at 1. Mccormick explained the lack of medical evidence to support her claim based on a physical disability and to support the restrictions on her work hours. *Id.* Mccormick explained how Dr. Aayar spoke to Dr. Kramer, but he was unsuccessful in attempts to contact Dr. Santoro. *Id.* Mccormick advised Meyer of her rights to appeal Hartford's denial of her claim. *Id.* Meyer did

not appeal the August 2015 claim denial and filed the instant action almost one year later. D. 34, at 15.

**LEGAL STANDARD**

Summary judgment is proper where the materials in the record demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The role of the judge in resolving a motion for summary judgment is not to weigh the evidence for its truth, but to determine whether sufficient evidence exists for a jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will construe the record "in the light most favorable to the non-movant" in deciding whether the case involves genuine issues of fact requiring a trial. *Payne v. Pauley*, 337 F.2d 767, 770 (7th Cir. 2003). By filing cross-motions for summary judgment, each movant must show he has met the traditional standards necessary to obtain judgment as a matter of law. *United Transp. Union v. Illinois Cent. R.R.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998). The Court must evaluate each motion separately on its merits, draw all reasonable inferences, and resolve all factual uncertainties against the party whose motion is under consideration. *Id.*

The Seventh Circuit has interpreted ERISA as requiring plaintiffs to exhaust administrative remedies prior to filing a complaint under the statute. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). "Exhaustion encourages informal, non-judicial resolution of disputes about employee benefits." *Id.* A court may excuse a plaintiff's failure to exhaust administrative remedies if there is "a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile." *Id.* at 361.

The Court ruled in a prior Order that Hartford's decision to deny Meyer disability benefits would be reviewed under an arbitrary and capricious standard. D. 31. A reviewing court

5

may find the decision of an ERISA plan administrator to be arbitrary and capricious only if the court cannot find rational support in the record for the decision being challenged. *Edwards*, 639 F.3d at 360.

## DISCUSSION

Under ERISA, a plan participant may bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A plan participant must demonstrate she has met the conditions required by the plan to recover benefits. *Robyns v. Reliance Std. Life Ins. Co.*, 130 F.3d 1231 (7th Cir. 1997).

The arguments from both parties can be narrowed down to two issues: whether Meyer exhausted her administrative remedies before filing the instant case, and whether Defendants' denial of Meyer's claim for long-term disability benefits was arbitrary and capricious. The Court will address each argument in turn.

### A. *Whether Plaintiff Exhausted Her Administrative Remedies*

Defendants argue Plaintiff's claim is barred for failure to exhaust administrative remedies prior to filing the instant case. D. 35, at 9. Defendants maintain Meyer did not appeal the May 7, 2015 denial of benefits, but instead followed instructions to perfect her claim. *Id.* at 10. Defendants issued a second denial of benefits on August 11, 2015 and Meyer was informed she could appeal the decision. *Id.* Meyer also called and spoke to Penny Mccormick on August 11, 2015, who again advised Meyer of her right to appeal the claim denial. *Id.* Defendants argue Meyer was advised several times of her duty to appeal the August 2015 denial before she could file an ERISA complaint. *Id.* Since Meyer did not request an appeal after the August 2015 denial, Defendants maintain Meyer did not properly exhaust her administrative remedies. *Id.* at 11.

Plaintiff argues she appealed Hartford's May 7, 2015 claim denial when she submitted written comments and records relating to her claim on June 2, 2015. D. 37, at 31. Meyer's June 2015 letter was addressed to the post office box of the appeals department. *Id.* at 33. Plaintiff points to the Policy's claim procedures, which stated any wholly or partially denied claim must be appealed once to Hartford before an ERISA complaint may be filed. *Id.* at 30. The Policy expressly allowed additional "documents, records and other information relating to [the] claim" to be submitted with an appeal. *Id.* Plaintiff submits she had no duty to appeal the August 2015 denial because she properly appealed the May 2015 denial and the Policy only required one appeal to exhaust administrative remedies. *Id.* at 32.[3]

The Seventh Circuit acknowledged "the ERISA claims process is not designed to be an endurance contest, where an employee must continue to appeal, without knowing what information the employer requires or whether the employer will even consider the appeal." *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 499 (7th Cir. 1998). In *Schleibaum*, an individual's claim for benefits was denied after the plan administrator found he was not permanently and totally disabled. *Id.* at 498. There, the plan administrator sent three conclusory letters that failed to provide (i) specific reasons why he was not considered disabled, (ii) specific information on how he could perfect his claim, and (iii) information about his right to appeal the denial. *Id.* While Plaintiff cites to the quoted passage above in support of her argument, *Schleibaum* is distinguishable from the instant case. Here, Plaintiff was provided specific reasons why disability

---

[3]Plaintiff also cites to the Court's prior Order (D. 19) denying Defendants' Motion to Dismiss in her argument that her administrative remedies were exhausted. D. 37, at 32. The Court found Plaintiff sufficiently alleged in her Complaint that the June 2015 letter to Hartford constituted an appeal. D. 19, at 8. While the well-pleaded allegations in the Complaint were sufficient to survive a motion to dismiss, the Court must now consider the entire administrative record in evaluating whether Plaintiff's claim is barred for failure to exhaust administrative remedies.

7

benefits were being denied, specific documents she should submit to perfect her claim, and information on her right to appeal if she disagreed with the denial in whole or in part.

Hartford's May 7, 2015 letter informed Meyer that if she did not agree with the claim denial and sought an appeal, she must write to the appeals department within 180 days clearly stating her position as to why the denial was incorrect in whole or in part. D. 23-1, at 101. Meyer's June 2, 2015 letter stated, "Hi – Enclosed are my medical records and claim forms from two doctors. Please advise regarding my disability income asap. EDJ [employer] still has me on part-time, irregular schedule [sic] leave of absence. My rheumatologist only wants me to work 28 or less hours a week." Doc. 23-6, at 55. There was neither a clear statement within this letter or enclosed as an attachment expressing why Hartford's claim denial was incorrect, nor was there an explicit request for an appeal. Although the letter was addressed to the appeals department, the fact that it was sent to the attention of Penny Mccormick and included the precise documents Meyer was instructed to submit to perfect her claim supports Defendants' argument this was not an appeal.

Further, the Policy states an appeal will be conducted by an individual who "is neither the individual who made the initial benefit decision, nor the subordinate of such individual." Doc. 23-12, at 27. Hartford's letters on May 7, 2015 and August 11, 2015 were both signed by Penny Mccormick. When Meyer received the August 2015 letter signed by Mccormick, she should have noticed that her June 2015 letter was not reviewed as an appeal because it was reviewed by the same individual who made the initial benefit determination. Meyer also spoke directly to Penny Mccormick on August 11, 2015 and Mccormick again advised Meyer of her appeal rights. Nothing in the record indicates Meyer notified Defendants that her June 2015 letter was meant as an appeal rather than an attempt to perfect her claim. It is worth noting that at that point, Meyer

8

was still within the 180 days to file an appeal to the May 2015 denial. Meyer could have instructed Defendants to consider her June letter an appeal at that time or she could have resubmitted the same documents with a clear statement requesting an appeal in order to have a full and fair review of her claim for benefits.

Plaintiff argues in the alternative that Hartford failed to follow the Policy's claims procedures and, as a result, the Court should consider Plaintiff to have exhausted her administrative remedies under 29 C.F.R. § 2560.503-1(l). D. 37, at 33. Under this rule, a claimant is deemed to have exhausted the administrative remedies of a plan only if the plan "has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l)(2)(i). Plaintiff has not alleged the Plan failed to provide a reasonable claims procedure under 29 C.F.R. § 2560.503-1; therefore, this argument is not persuasive.

While Plaintiff maintains she appealed the May 2015 claim denial and therefore, exhausted her administrative remedies, it clearly was not treated as an appeal by Hartford. Meyer sent her letter to the address of the appeals department; however, she otherwise followed the instructions to perfect her claim by mailing the precise documents requested to the attention of the same claims analyst who sent the first denial. Further, Meyer did not include a clear statement of why she disagreed with Defendants' determination or even the word "appeal." For these reasons, the Court finds Meyer did not exhaust her administrative remedies. Even if Meyer had properly exhausted her administrative remedies, Hartford's determination that Meyer was not physically disabled under the terms of the Policy was not arbitrary and capricious.

## B. Arbitrary and Capricious Standard of Review

As stated in a prior order, the plan administrator's decision to deny benefits must be reviewed under an arbitrary and capricious standard when the administrator has discretionary authority to determine benefits. D. 31. See also *Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018). The plan administrator's decision will not be found arbitrary and capricious "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Hennen*, 904 F. 3d at 539 (citations omitted).

Plaintiff argues Defendants' denial of benefits was arbitrary and capricious because Hartford either disregarded or misconstrued Meyer's medical records, particularly documents from Meyer's rheumatologist, Dr. Santoro. D. 34, at 17-8. Plaintiff says Hartford knew Dr. Santoro's conclusions were important in determining her functionality as he was the only treating physician who specialized in rheumatology, yet Hartford and its independent medical reviewer disregarded Dr. Santoro's opinion and APS. *Id.* at 18. Defendants maintain that the denial of Meyer's claim for benefits was supported by the medical evidence in the record. D. 35, at 11.

The Seventh Circuit has stated, "it is error to demand laboratory data to credit the symptoms of fibromyalgia—the crucial symptoms, pain and fatigue, won't appear on laboratory tests." *Kennedy v. Lily Extended Disability Plan*, 856 F.3d 1136, 1139 (7th Cir. 2017). That error was not committed here, as Hartford did not demand laboratory data to confirm Meyer's diagnosis. Instead the claims analysts and independent reviewer reasonably questioned the conclusions of Meyer's treating physicians. It is evident by the several unsuccessful attempts

10

made to contact Dr. Santoro that Hartford recognized the importance of understanding Dr. Santoro's conclusion that Meyer could not work more than 28 hours per week.

In the May 2015 claim denial, Hartford wrote Meyer did not meet the Policy's definition for a physical disability. D. 23-1, at 100. Hartford did not have an APS from any physician restricting Meyer from full time work, but acknowledged she recently began seeing a rheumatologist. *Id.* Meyer was advised she could perfect her claim by submitting an APS from "a physician who was restricting [her] from working full-time." *Id.* Hartford also requested medical records from "all treating doctors for the period of 7/1/2014 to present time." *Id.* Hartford did not dispute whether Meyer was experiencing symptoms of a physical condition, but rather it emphasized there was no evidence that a physical disability restricted her from full-time work. As discussed in detail above, Meyer attempted to perfect her claim by submitting additional medical records and APS forms from Dr. Kramer and Dr. Santoro.

In June 2015, Hartford sent letters to Dr. Kramer and Dr. Santoro to better understand Meyer's physical condition and how her condition affected her ability to work. *Id.* at 93-5. Both doctors were asked to clarify how they reached their respective conclusions on Meyer's work restrictions by June 18, 2015. *Id.* In his response on June 24, 2015, Dr. Santoro did not expand on how he reached the conclusion in his APS that Meyer should be restricted to 25-28 hours per week. D. 23-6, at 49. Dr. Santoro stated, "Patient has diffuse pain and 18 of 18 tender points positive on digital palpation together and debilitating fatigue" and he directed Hartford to "review extensive information provided by chiropractor." *Id.* With regards to when Meyer's physical condition began impacting her ability to work full-time, Dr. Santoro replied, "Patient first saw me 11/26/14." *Id.* Dr. Kramer responded with a variety of objective findings and that

11

Meyer's physical condition first prevented her from full-time work on September 19, 2014. *Id.* at 50.

As explained in the August 2015 claim denial, Hartford sought the opinion of an independent medical reviewer, Dr. Aayar, to evaluate whether Meyer's physical condition restricted her ability to work. D. 23-1, at 85. Dr. Aayar observed that Meyer's file was "thinly and sparsely developed as it pertains to the claimant's medical (physical) issues." D. 23-2, at 15. Meyer "[did] not appear to have a clear and unifying diagnosis" and her "underlying psychopathology and superimposed issues…[called] into question the validity of some of the diagnoses[.]" *Id.* Dr. Aayar further observed Dr. Santoro's APS, which restricted Meyer to working 25 to 28 hours per week, was comprised mostly of "preprinted checkboxes, with little in the way of narrative commentary." *Id.* at 13. Dr. Aayar attempted to contact Dr. Kramer and Dr. Santoro, but he was unsuccessful. *Id.* at 15. Without any additional information from Meyer's treating physicians, Dr. Aayar made an initial assessment based on the record before him. *Id.* He did not endorse any restrictions and found Meyer should be considered capable of working full-time. *Id.* at 17.

After Dr. Aayar's initial assessment, Hartford sent the report to Dr. Kramer and Dr. Santoro on July 15, 2015. D. 23-1, at 87-90. While it was preferred for the medical reviewer speak with them directly, Hartford pointed out that Dr. Aayar had been unsuccessful in attempting to contact them. *Id.* As a result, Dr. Aayar's report was sent "as a courtesy to afford you every opportunity to provide us with additional information not contained in your medical records." *Id.* They were asked to review the report and respond within five business days. *Id.* It does not appear that either doctor responded to dispute or validate Dr. Aayar's assessment. Still, Hartford continued its efforts to obtain additional information from Meyer's treating physicians.

Hartford requested Dr. Aayar continue his attempts to contact Dr. Kramer and Dr. Santoro and provide an addendum to his initial assessment. D. 23-2, at 20. Dr. Aayar left messages with Dr. Santoro's office, but was unsuccessful in speaking to Dr. Santoro. D. 23-3, at 1. Finally, a case coordinator called Dr. Aayar and informed him that Dr. Santoro would not participate in a phone interview, but he would "complete forms." *Id.* Dr. Aayar prepared and faxed a list of questions to Dr. Santoro, however, he never received a response. *Id.* Dr. Aayar spoke to Dr. Kramer, but his assessment was unchanged. *Id.* at 2. Dr. Kramer acknowledged Meyer did not have a clear unifying diagnosis and her mental health issues called into question the validity of her physical allegations. *Id.* at 4. Dr. Kramer also stated he was under the impression that Meyer was not working at all. *Id.*

Applying the arbitrary and capricious standard to Hartford's review of Meyer's medical records and the APS forms submitted by her treating physicians, Hartford made a reasonable determination based on all the relevant information before it. Hartford provided Meyer a reasoned explanation of how it determined there was insufficient evidence of a physical disability. It does not appear that Hartford disregarded the opinion of Meyer's treating physicians, as several attempts were made to include them in the claim review. It was reasonable for Hartford and Dr. Aayar to request additional information from Meyer's physicians, rather than blindly accept their imposed work restrictions. In the claim denial, Hartford discussed how its decision was based on the evidence before it, which included medical records, statements from treating physicians, and Dr. Aayar's report. Hartford explained how it applied the terms of the Policy to its consideration of the evidence in Meyer's claim file.

Additionally, Plaintiff submits that Hartford's reliance on the opinion of its independent medical reviewer was unreasonable. D. 34, at 22. Defendants argue Hartford reasonably relied on the opinion of the independent medical reviewer in its denial of benefits. D. 35, at 14.

Meyer's treating physicians were given ample opportunity to clarify how they concluded Meyer should be restricted from full-time work. Hartford made several attempts, both directly and indirectly through Dr. Aayar, to obtain more information from Dr. Kramer and Dr. Santoro. When Dr. Aayar finally contacted Dr. Kramer, his assessment was unchanged as Dr. Kramer largely agreed with Dr. Aayar's assessment. Moreover, Dr. Kramer had been under the false impression that Meyer was not working at all. Dr. Santoro chose not to respond to Dr. Aayar or Hartford's repeated attempts to contact him for additional information.

Hartford's reliance on the opinion of Dr. Aayar over the opinions of Meyer's treating physicians was not arbitrary and capricious. "A plan fiduciary's placing stock in the opinion of a well-informed independent expert is often strong evidence of a thorough investigation that completely shields a benefits determination from judicial reversal." *Bismark-Thurbush v. Metro. Life/Disability Ins. Co.*, 2004 U.S. Dist. LEXIS 7991 (N.D. Ill. 2004) (quoting *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998)).

A reviewing court need only find that a plan administrator's decision "has rational support in the record" and it will only be overturned if found "downright unreasonable." 639 F.3d at 360 (citations omitted). The Court finds more than enough rational support in the record for Hartford's determination that Meyer was not physically disabled under the terms of the Policy and that Hartford's denial of her claim for benefits was reasonable.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion (D. 34) for Summary Judgment is DENIED and Defendants' Motion (D. 35) for Summary Judgment is GRANTED.

The Clerk is directed to close the case.

Signed on this 9th day of October, 2019.

s/ James E. Shadid_____  
James E. Shadid  
United States District Judge